KLEIN INDUSTRIAL SALVAGE, and another, Plaintiffs-Appellants, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, and another, Defendants-Respondents.

*No. 75–628. Submitted on briefs October 5, 1977.—
Decided November 1, 1977.*
(Also reported in 259 N. W. 2d 124.)

For the appellants the cause was submitted on the brief of *Law Office C. Donald Straub* of Milwaukee, and *Howard L. Scheeler,* of counsel, of Waukesha.

For the respondent Department of Industry, Labor and Human Relations, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Lowell E. Nass,* assistant attorney general.

PER CURIAM. The issue is whether a claimant under the Workers' Compensation Act may be denied benefits pursuant to sec. 102.42(7), Stats., for unreasonable neglect or refusal to submit to surgical treatment if he failed to obtain the needed treatment from a source other than the employer who had denied liability for the medical care.

The hearing examiner of the Department of Industry, Labor & Human Relations (DILHR) found the hernias the claimant (Willis) had sustained were accidental injuries arising out of his employment which resulted in temporary total disability from April 1973 until June 1974. The examiner further found that Willis' neglect to submit to surgical treatment until June 1974 was not unreasonable. An interlocutory order directing Klein (the employer) and its insurer to pay compensation benefits to Willis, entered July 12, 1974, was affirmed by DILHR on August 30, 1974. Upon review, the Dane County Circuit Court confirmed DILHR's order in a judgment entered January 16, 1976. We affirm the judgment of the Dane County Circuit Court.

The pertinent facts are as follows: The claimant, Robert Willis, began working for Klein Industrial Salvage in September, 1972. Willis testified that on January 11, 1973, he sustained an injury at work while doing heavy lifting. In February, because he was still experiencing pain, he consulted a doctor who diagnosed a hernia and recommended immediate treatment. Both the doctor and Willis' wife, Mary, allegedly informed Klein, Willis' employer of the injury. Klein reportedly told Willis to keep working as long as Willis was able and that Klein did not think his insurance would cover Willis' surgery because Willis had had hernias repaired before.

Willis continued working until April 27, 1973 when he again injured himself while lifting a motor. Klein sent Willis to a physician who diagnosed biliateral hernia

which would disable Willis for any work which involved lifting. Willis testified that Klein received the medical report.

Willis was scheduled for surgery in May, but he did not undergo the treatment because he could not afford to pay for it himself. Willis' wife testified that the hospital staff had informed Willis that Employers Insurance of Wausau, Klein's insurer, had denied liability for the scheduled surgery.

In June of 1973, Willis left Milwaukee and returned to his previous home in the Upper Peninsula of Michigan. He testified that he contacted the Michigan Department of Social Services, which had paid for one of his earlier hernia operations. The Department was willing to fund another operation, but Willis did not have surgery until June of 1974 because he could not find a doctor in the Upper Peninsula who was willing to operate on him. The surgery was ultimately done in Grand Rapids.

Under the Workers' Compensation Act, a claimant may receive reduced benefits or be denied them altogether if he or she fails to mitigate the damages resulting from a work-related injury. The statute provides as follows:

"TREATMENT REJECTED BY EMPLOYE. Unless the employe shall have elected Christian Science treatment in lieu of medical, surgical, hospital or sanatorium treatment, no compensation shall be payable for the death or disability of an employe, if his death be caused, or insofar as his disability may be aggravated, caused or continued (a) by an unreasonable refusal or neglect to submit to or follow any competent and reasonable medical or surgical treatment, (b) or, in the case of tuberculosis, by his refusal or neglect to submit to or follow hospital or sanatorium treatment when found by the department to be necessary. The right to compensation accruing during a period of refusal or neglect under (b) shall be barred, irrespective of whether disability was aggravated, caused or continued thereby." Sec. 102.42 (7), Stats.

The reasonableness of an employee's neglect or refusal to submit to treatment is a question of fact to be determined by DILHR. *Chain Belt Co. v. Industrial Commission,* 188 Wis. 414, 417, 206 N.W. 209 (1925). The agency's finding of fact will be upheld on review if there is credible evidence on the record to sustain the finding made. *Transamerica Ins. Co. v. ILHR Dept.,* 54 Wis.2d 272, 277, 195 N.W.2d 656 (1972) ; *Reich v. ILHR Dept.,* 40 Wis.2d 244, 250, 161 N.W.2d 878 (1968) ; *Green Bay Warehouse Operations, Inc. v. Industrial Comm.,* 19 Wis. 2d 11, 17, 119 N.W.2d 435 (1963).

Klein and the insurer argue that a claimant's failure to seek treatment at his or her own expense or at the public's expense may constitute unreasonable refusal or neglect to submit to treatment within the meaning of sec. 102.42(7), Stats. They assert that it was unreasonable for Willis to wait a year before having the operation in Michigan. We note that Willis testified that he requested that the Michigan Department of Social Services provide the operation as soon as he returned to Michigan and that the delay was due to unavailability of a surgeon near Willis' home.

Willis' efforts to secure the needed operation in Michigan are not relevant. In prior cases we have said that a claimant cannot be said to have unreasonably refused treatment if none was offered by the employer. *Universal Rundle Corporation v. Industrial Commission,* 271 Wis. 578, 582, 74 N.W.2d 193 (1956) ; *Banner Coffee Company v. Billig,* 170 Wis. 157, 161, 174 N.W. 544 (1919).[1] To deny compensation to a worker who could

[1] A similar conclusion was reached in *Flores v. Workmen's Compensation Appeals Board,* 36 Cal. App3d 388, 111 Cal. Rptr. 424 (1974). The California statute provides that "no compensation is payable in case of the disability of an employee . . . when and so far as his disability is caused, continued, or aggravated,

not pay the cost of medical treatment personally or who could not find someone to pay the cost would be inconsistent with the statute's purpose.

The purpose of the Workers' Compensation Act is "to provide financial and medical benefits to the victim of 'work-connected' injuries and their families—regardless of fault, and to allocate the financial burden to the most appropriate source, the employer, and, ultimately the consumer of the produce." *Brenne v. ILHR Department*, 38 Wis.2d 84, 91, 92, 156 N.W.2d 497 (1968). Although sec. 102.42(7), Stats., does not explicitly declare that the treatment referred to must be supplied by the employer, the meaning of subsection (7) can be determined by looking at it in the context of the total structure of sec. 102.42. *Tews Lime & Cement Co. v. ILHR Department*, 38 Wis.2d 665, 672, 158 N.W.2d 377 (1968). The first subsection specifies the treatment, medicine, devices, and training which an employer must supply as incidental compensation.[2] The following five subsec-

by an unreasonable refusal to submit . . . to any surgical treatment. . . ." The court interpreted the statute to mean that "a tender of medical or surgical treatment by the employer himself is an essential prerequisite to any possible forfeiture under that section." 36 Cal. App.3d at 393, 111 Cal. Rptr. at 427. The claimant, who refused an operation to repair his hernia offered by the welfare department, was found not to have unreasonably refused treatment within the meaning of the statute.

*Universal Rundle, supra,* involved an employee who consulted two independent doctors. Each doctor informed him he should have surgery but neither doctor was willing to act. The employee sought treatment from the company doctor who refused to render medical treatment. This court held that there was no unreasonable refusal of treatment because none had been offered. 271 Wis. at 582. There was no suggestion that the employee should have procured the treatment from one of the other doctors.

[2] Sec. 102.42(1), Stats.:

"Incidental compensation. (1) TREATMENT OF EMPLOYE. The employer shall supply such medical, surgical, chiropractic, podiatric

tions amplify the requirements of subsection (1).[3] In that context, subsection (7) should be read as an excep-

and hospital treatment, medicines, medical and surgical supplies, crutches, artificial members, appliances, and training in the use of artificial members and appliances, or, at the option of the employe, if the employer has not filed notice as provided in sub. (5), Christian Science treatment in lieu of medical treatment, medicines and medical supplies, as may be reasonably required to cure and relieve from the effects of the injury, and to attain efficient use of artificial members and appliances, and in case of the employer's neglect or refusal seasonably to do so, or in emergency until it is practicable for the employe to give notice of injury, the employer shall be liable for the reasonable expense incurred by or on behalf of the employe in providing such treatment, medicines, supplies and training. Where the employer has knowledge of the injury and the necessity for treatment, the employer's failure to tender the necessary treatment, medicines, supplies and training constitutes such neglect or refusal. The employer shall also be liable for reasonable expense incurred by the employe for necessary treatment to cure and relieve the employe from the effects of occupational disease prior to the time that the employe knew or should have known the nature of his or her disability and its relation to employment, and as to such treatment subs. (2) and (3) shall not apply. The obligation to furnish such treatment and appliances shall continue as required to prevent further deterioration in the condition of the employe or to maintain the existing status of such condition whether or not healing is completed."

[3] "(2) PANELS OF PHYSICIANS, CHIROPRACTORS OR PODIATRISTS. The employe shall have the right to choose his or her attending physician, chiropractor or podiatrist from any available panel of physicians, chiropractors or podiatrists to be named by the employer. Where the employer has knowledge of the injury and the necessity for treatment, the employer's failure to tender the same shall constitute such neglect or refusal. Failure of the employer to maintain a reasonable number of competent and impartial physicians, chiropractors or podiatrists, ready to undertake the treatment of the employe, and to permit the employe to choose an attendant from among them, constitutes neglect and refusal to furnish such attendance and treatment. Nothing contained in this section limits the right of the employe to make a 2nd choice of physician, chiropractor or podiatrist from the panel named by the employer. The department may upon summary hearing permit an

tion under which the employer is relieved of liability when the employee refuses the treatment required by subsection (1); subsection (7) should not be read as a requirement that the employee seek treatment from someone other than the employer.[4]

injured employe to make selection of a physician, chiropractor or podiatrist not on the panel.

"(3) TREATMENT PANEL. In determining the reasonableness of the size of the panel, the department shall take into account the number of competent physicians, chiropractors and podiatrists immediately available to the community in which the service is required, and where only one such physician, chiropractor or podiatrist is available, the tender of attention by such practitioner shall be construed as a compliance with this section unless specialized or extraordinary treatment is necessary. In such panel, partners and clinics shall be deemed as one practitioner. Every employer shall post the names and addresses of the physicians, chiropractors and podiatrists on his or her panel in such manner as to afford the employer's employes reasonable notice thereof.

"(4) PREJUDICED PRACTITIONER. Whenever in the opinion of the department a panel member has not impartially estimated the degree of permanent disability or the extent of temporary disability of any injured employe, the department may cause such employe to be examined by a physician, chiropractor or podiatrist selected by it, and to obtain from him or her a report containing an estimate of such disabilities. If the report shows that the estimate of the panel practitioner has not been impartial from the standpoint of such employe, the department may in its discretion charge the cost of such examination to the employer, if the employer is a self-insurer, or to the insurance company which is carrying the risk.

"(5) CHRISTIAN SCIENCE. Any employer may elect not to be subject to the provisions for Christian Science treatment provided for in this section by filing written notice of such election with the department.

"(6) ARTIFICIAL MEMBERS. Liability for repair and replacement of prosthetic devices is limited to the effects of normal wear and tear. Artificial members furnished at the end of the healing period for cosmetic purposes only need not be duplicated."

Sec. 102.42 (2)–(6), Stats.

[4] Subsections (8) and (9) of sec. 102.42, Stats. cover the special case of an injured state employee and subsection (10) authorizes DILHR to provide special rehabilitation services.

In the instant case, there is credible evidence in the record to support a finding that Klein did not offer to provide the corrective surgery Willis needed. Willis and his wife testified that when Klein was first informed of the diagnosis, Klein told Willis to keep working and Klein expressed doubts whether his insurance would cover the cost of treatment. Klein knew of the second injury and the need for surgery; Willis' wife testified that the hospital staff told Willis that Klein's insurer would not pay the medical bills. Since treatment was not offered by the employer, it could not be refused under sec. 102.42(7).

For the reasons set forth above, the judgment is affirmed.